Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| DORAL FINANCIAL CORPORATION<br><br>APELADO<br><br>V.<br><br>DEPARTAMENTO DE HACIENDA<br><br>APELANTE | TA2025AP00678 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm. SJ2024CV02117<br><br><br>Sobre: Denegatoria de Reintegro |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez, Pagán Ocasio y la Jueza Álvarez Esnard.

Pagán Ocasio, juez ponente.

# SENTENCIA

En San Juan, Puerto Rico, a 20 de marzo de 2026.

## I.

El 15 de diciembre de 2025, el Estado Libre Asociado de Puerto Rico, por sí y en representación del Departamento de Hacienda, por conducto de la Oficina del Procurador General (Parte apelante), presentó, digitalmente, un recurso de apelación en el que nos solicita que revoquemos la *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario), el 22 de octubre de 2025, notificada y archivada digitalmente en autos el 23 de octubre de 2025.[1] Mediante dicho dictamen, el TPI declaró Ha Lugar la *Moción de Sentencia Sumaria* que Doral Financial Corporation (DFC o parte apelada) presentó y, en consecuencia, ordenó al Departamento de Hacienda reintegrar a favor de DFC la suma de $30,710.718. El foro primario dejó

---

[1] Véase entrada núm. 60 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC-TPI).

pendiente determinar si procede la imposición del pago de intereses al Departamento de Hacienda.

El 9 de enero de 2026, emitimos una *Resolución* en la que le concedimos a la parte apelada hasta el 14 de enero de 2026 para presentar su alegato en oposición.[2]

Ese mismo día, DFC presentó un *Alegato de la parte apelada* en el que solicitó que confirmemos la *Sentencia Parcial* apelada.[3]

Con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso. En adelante, pormenorizamos los hechos procesales pertinentes para su atención.

**II.**

El caso de marras tuvo su génesis el 1 de marzo de 2024, cuando DFC presentó una *Demanda* sobre denegatoria de reintegro en contra del Departamento de Hacienda.[4] Mediante esta, alegó que, rindió planillas y pagó sus impuestos para el periodo contributivo entre 2006 a 2013. Indicó que, dentro de dicho periodo, junto a otras empresas del grupo corporativo Doral, otorgó un *Closing Agreement* con el Departamento de Hacienda, fijando su responsabilidad contributiva.[5] Específicamente, mencionó que, el 30 de diciembre de 2013 las partes de epígrafe otorgaron un *Closing Agreement* y que, según este mismo refleja, DFC pagó $34,097,526 en exceso de su responsabilidad contributiva para el año objeto del acuerdo. Además, arguyó que, el *Closing Agreement* disponía que el crédito podía ser transferido entre DFC y las otras empresas del grupo corporativo Doral.

Así las cosas, adujo que, oportunamente, solicitó el pago del reintegro por la suma de $34,097,526, incluido en dicho acuerdo

---

[2] Véase entrada núm. 2 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA).
[3] Íd., entrada núm. 3.
[4] Véase entrada núm. 1 del expediente digital del caso en el SUMAC-TPI.
[5] El grupo corporativo Doral incluía las entidades Doral Financial Corp., Doral Bank, Doral Mortgage, LLC, Doral Insurance Agency, LLC, Doral Properties, Inc., Doral Recovery II, LLC y Doral Recovery, Inc, algunas ya disueltas.

final. Sin embargo, expuso que, el Departamento de Hacienda no le ha devuelto el exceso de contribuciones pagadas.

Según las alegaciones, el 29 de septiembre de 2021, el Departamento de Hacienda le notificó que realizaría una auditoría, como requisito para pagar el reintegro solicitado. Tras un extenso proceso de investigación por el Departamento de Hacienda, el 29 de enero de 2024, la parte apelante emitió un informe final enmendado de su auditoría, denegando el reintegro, bajo el fundamento de que Doral Bank había reclamado el referido crédito en su planilla.

Ahora bien, el DFC arguyó que no existe documento alguno que establezca que cedió el crédito a Doral Bank. Por su parte, alegó que, conforme al *Settlement and Release Agreement*, DFC y Doral Bank estipularon que el reintegro por el exceso de pago realizado por DFC sería cobrado por esta última. Por todo lo anterior, solicitó al foro primario que revocara la determinación del Departamento de Hacienda que denegó el reintegro solicitado.

El 13 de mayo de 2024, el Estado Libre Asociado de Puerto Rico, por sí y en representación del Departamento de Hacienda, presentó una *Contestación a Demanda*.[6] En esta, negó varias de las alegaciones de la demanda y alegó afirmativamente que la agencia no cuestiona el referido *Closing Agreement*. Asimismo, aludió a que, las alegaciones en este caso se rigen por el Código de Rentas Internas de Puerto Rico de 1944, Ley Núm. 120-1994, según enmendada, 13 LPRA sec. 8006 ant. *et seq.* (Código de Rentas Internas de 1994), toda vez que DFC se acogió a la Opción 94 del formulario correspondiente en virtud de la Sección 1021.04 del Código de Rentas Internas de Puerto Rico de 2011, Ley Núm. 1-2011, según enmendada, 13 LPRA sec. 30064 (Código

---

[6] Íd., entrada núm. 11.

de Rentas Internas de 2011).[7] Además, arguyó que, el Departamento de Hacienda tenía el derecho y la autoridad de auditar o examinar, en cualquier momento, la exactitud del sobrepago y que los procesos de auditoría no tienen un término prescriptivo para determinar la procedencia de un reintegro.

La parte apelante argumentó que, una vez transferido el crédito por DFC a Doral Bank, DFC no lo podía reclamar debido al tratamiento contributivo que Doral Bank le confirió al referido crédito. Esto, al asignarlo en su planilla de contribución sobre ingresos de corporación original correspondiente al periodo contributivo del año 2013, como crédito a contribución estimada del año 2014. Por tanto, alegó que, una vez solicitado como crédito a la contribución estimada del año 2014, se convierte en contribución pagada en el periodo contributivo del año 2014 para Doral Bank.

Tras varios trámites procesales, innecesarios pormenorizar, el 8 de noviembre de 2024, DFC presentó una *Moción de Sentencia Sumaria*.[8] En esta, formuló treinta y seis (36) determinaciones de hechos materiales sobre los cuales alegó no existe controversia.

En resumen, alegó que, en este caso, procede el reintegro solicitado de las contribuciones pagadas en exceso, toda vez que el Departamento de Hacienda no ha reintegrado a DFC el balance no aplicado de $30,710,718 que resta del sobrepago. Adujo que, dicho reintegro tampoco fue pagado a Doral Bank. Señaló que, DFC y Doral Bank dejaron de hacer negocios por lo que no existe opción alguna para que se aplique el sobrepago a su responsabilidad contributiva. Por lo cual, sostuvo que, tiene derecho al reintegro, de conformidad con el *Closing Agreement* y el *Settlement and Release Agreement*. Cónsono con lo antes expuesto, solicitó al TPI revocar la

---

[7] La Ley Núm. 120-1994, según enmendada, fue derogada por la Ley Núm. 1-2011, excepto los incisos (f) y (h) de la Sección 1123 y el Capítulo 7 del subtítulo B, por disposición del Artículo 6110.01 de la Ley Núm. 1-2011, según enmendada.
[8] Íd., entrada núm. 39.

determinación del Departamento de Hacienda y, en consecuencia, ordenar el reintegro de la suma de $30,710.718, más intereses. Arguyó que, tiene derecho a cobrar intereses a partir del 26 de noviembre de 2014, cuando Doral Bank reclamó el pago del reintegro.

El 14 de enero de 2025, la parte apelante presentó una *Oposición a Moción de Sentencia Sumaria presentada por la parte demandante y Solicitud de Sentencia Sumaria a favor del Estado.*[9] En esta, argumentó que, la cantidad solicitada por DFC ya había sido acreditada por Doral Bank a la contribución estimada del año contributivo 2014 y que dicho pago se considera tan efectivo como si se hubiera hecho en dinero. Así las cosas, adujo que, las enmiendas posteriores efectuadas por Doral Bank a su planilla del año 2013 fueron ineficaces, toda vez que, cualquier gestión por realizarse con relación a dicha cantidad, debió efectuarse en el año contributivo 2014. Por ello, sostuvo que, DFC estaba impedido de reclamar en la planilla enmendada del año 2013 el crédito transferido por DFC a Doral Bank. Además, arguyó que, la solicitud de Doral Bank para que la contribución pagada en exceso fuera acreditada como contribución estimada del año 2014, contenía la suma de $33,349,930, la cual había sido transferida como sobrepago por parte de DFC a Doral Bank. Por su parte, formuló treinta y ocho (38) determinaciones de hechos materiales sobre los cuales alegó no existe controversia.

El 5 de febrero de 2025, DFC presentó una *Breve Réplica* en la que reiteró sus argumentos esbozados en la solicitud de sentencia sumaria.[10] Adujo que no existen controversias de hechos materiales que impidan dictar sentencia sumaria y, que la posición de la parte apelante carece de mérito. En particular, arguyó que la

---

[9] Íd., entrada núm. 49.
[10] Íd., entrada núm. 51.

interpretación que adoptó el Estado es inconsistente con lo acordado por las partes en el *Closing Agreement* y con el propósito del Código de Rentas Internas, *supra.*

El 30 de septiembre de 2025, se celebró una vista argumentativa para discutir los asuntos de las mociones dispositivas.[11] Ambas partes expusieron su posición respecto al reclamo de DFC. En esta, no se desfiló prueba alguna.

El 22 de octubre de 2025, notificada y archivada digitalmente en autos el 23 de octubre de 2025, el TPI dictó una *Sentencia Parcial* en la que declaró Ha Lugar la *Moción de Sentencia Sumaria* presentada por DFC, sin formular determinaciones de hechos ni conclusiones de derecho a tenor con la Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2.[12] El foro primario incorporó por referencia e hizo formar parte del dictamen los argumentos y alegaciones esbozadas por DFC en su moción dispositiva y determinó que la única controversia por atender era la siguiente:

> ¿Si procede reintegrar a DFC un sobrepago de $33,349,930.00 (periodo contributivo 2012) que fue transferido a Doral Bank - aun cuando, al presentar su Planilla para el Año Contributivo 2013, esté último solicitó acreditar dicho sobrepago a su contribución estimada para el próximo año contributivo (2014); pero posteriormente enmendó su correspondiente Planilla 2013 en dos (2) ocasiones para reclamar dicho sobrepago como reintegro - al amparo de un Acuerdo ("Closing Agreement") suscrito entre el Grupo Corporativo Doral Financial y el Departamento de Hacienda el 30 de diciembre de 2013?

El TPI concluyó que, por sus propios actos, el Departamento de Hacienda está impedido de reclamar que el sobrepago se tenía que acreditar a la contribución estimada para el 2014, dado que la auditoría no ocurrió previo a las dos enmiendas que Doral Bank presentó a su planilla.

---

[11] Íd., entrada núm. 57. *Minuta* de la vista argumentativa, transcrita el 10 de octubre de 2025.
[12] Íd., entrada núm. 60.

Oportunamente, el 6 de noviembre de 2025, la parte apelante presentó una *Moción solicitando reconsideración* para que el TPI dejara sin efecto la *Sentencia Parcial.*[13] En resumen, insistió en que el sobrepago se registró y se convirtió en una contribución pagada para el año 2014. Por lo cual, manifestó que, si Doral Bank deseaba revertir la transferencia de sobrepago, correspondía a año contributivo 2014, dado que dicho crédito no estaba disponible para el año 2013.

El 13 de noviembre de 2025, DFC presentó una *Oposición a Moción de Reconsideración* en la cual sostuvo que la decisión del TPI está apoyada por los términos y condiciones del *Closing Agreement* de 2013.[14]

El 14 de noviembre de 2025, el TPI emitió una *Orden* en la que declaró No Ha Lugar la moción de reconsideración.[15]

Inconforme, el 15 de diciembre de 2025, la parte apelante presentó el recurso de apelación de epígrafe en el que formuló el siguiente señalamiento de error:

> Erró en derecho el Tribunal de Primera Instancia al dictar Sentencia Sumaria parcial y declarar "Ha Lugar" la Demanda incoada por DFC y al condenar al DHPR a pagar un reintegro de $30,710,718.00 a DFC a pesar de que las enmiendas del DFC a su planilla del 2013 fueron ineficaces pues cualquier gestión con respecto al sobrepago debería efectuarse con respecto al año 2014 y no al 2013.

Argumentó que, en el caso de marras, no procede que el Departamento de Hacienda pague a DFC la suma de $30,710,718, toda vez que las enmiendas posteriores efectuadas por Doral Bank a su planilla del año 2013 resultan ineficaces, dado que cualquier gestión con relación al sobrepago solicitado debió efectuase en el año contributivo 2014 y no en el 2013.

---

[13] Íd., entrada núm. 63.
[14] Íd., entrada núm. 65.
[15] Íd., entrada núm. 66.

Por su parte, el 9 de enero de 2026, la parte apelada presentó su oposición. Arguyó que, la expresión contenida en la planilla inicial de Doral Bank para el periodo contributivo terminado el 31 de diciembre de 2013, a los efectos de que el sobrepago se aplicaría a responsabilidad contributiva para el año 2014, dejó de tener vigencia. Adujo que, al momento en que se solicitó el reintegro, el sobrepago no había sido aplicado, por lo que permanecía latente el derecho de las empresas del grupo corporativo de Doral a solicitar la devolución del dinero pagado en exceso. Sostuvo que, las enmiendas a las planillas realizadas por DFC y Doral Bank son válidas porque el Código de Rentas Internas de 1994, *supra*, no limitaba la facultad de los contribuyentes a enmendar sus planillas para solicitar posteriormente un reintegro.

**III.**

**A.**

La Regla 36 de Procedimiento Civil, *supra*, R. 36, regula todo lo concerniente a la moción de sentencia sumaria. Dicho mecanismo procesal se utiliza en aquellos litigios en los que no existen controversias genuinas de hechos materiales y, por consiguiente, no resulta necesaria la celebración de un juicio en su fondo, en la medida en que solo resta por dilucidar determinadas controversias de derecho. ***Negrón Castro v. Soler Bernardini***, 2025 TSPR 96, 216 DPR ___ (2025); ***BPPR v. Zorrilla y otro***, 214 DPR 329, 338 (2024). Su propósito principal es la solución justa, rápida y económica de los litigios civiles. ***SLG Fernández-Bernal v. RAD-MAN et al.***, 208 DPR 310, 334-335 (2021).

El promovente podrá solicitar al tribunal que se dicte sentencia sumaria a su favor, ya sea sobre la totalidad o cualquier parte de la reclamación solicitada. Reglas 36.1 y 36.2 de Procedimiento Civil, *supra*, R. 36.1 y R. 36.2. La moción de sentencia sumaria debe contener: una exposición breve de las

alegaciones de las partes, los asuntos litigiosos en controversia, la causa de acción sobre la cual se solicita la sentencia sumaria, una relación concisa y organizada en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia, con indicación de los párrafos o páginas de la prueba documental donde se establecen los mismos, la argumentación del derecho aplicable y el remedio que se solicita. Regla 36.3 (a) de Procedimiento Civil, *supra*, R. 36.3(a).

El promovente de una sentencia sumaria deberá establecer, mediante declaraciones juradas o con prueba admisible en evidencia, que no existe controversia real respecto a hechos materiales de la controversia. Regla 36.1 de Procedimiento Civil, *supra*; ***Meléndez González et al. v. M. Cuebas***, 193 DPR 100, 110 (2015).

De igual forma, la parte que se opone a la sentencia sumaria tiene que cumplir con las exigencias de la Regla 36, *supra*. En particular, debe enumerar aquellos hechos materiales de buena fe controvertidos y aquellos sobre los cuales no hay controversia. Regla 36.3 (b) de Procedimiento Civil, *supra*, R. 36.3(b). En ambos casos, por cada hecho, se tienen que indicar los párrafos o páginas de la prueba documental que establecen o impugnan ese hecho. Íd.

Para prevalecer en una moción de sentencia sumaria, su promovente tiene que establecer su derecho con claridad y debe demostrar que no existe controversia en cuanto a ningún hecho material, o sea, ningún elemento de la causa de acción. ***Meléndez González et al. v. M. Cuebas***, *supra*, pág. 110. Por hechos materiales se entienden aquellos que pueden afectar el resultado de una reclamación de acuerdo con el derecho sustantivo. ***Ramos Pérez v. Univisión***, 178 DPR 200, 213 (2010).

Nuestro máximo foro ha establecido que no es aconsejable dictar una sentencia sumaria cuando existe controversia sobre

asuntos de credibilidad o que envuelvan aspectos subjetivos tales como la intención, los propósitos mentales o la negligencia. ***Aponte Valentín v. Pfizer Pharmaceuticals***, *LLC*, 208 DPR 263, 278 (2021). Sin embargo, "nada impide que se utilice el mecanismo de sentencia sumaria en reclamaciones que requieran elementos subjetivos o de intención cuando surge de los documentos que se considerarán en la solicitud de sentencia sumaria la inexistencia de una controversia en torno a los hechos materiales". ***Cruz Cruz v. Casa Bella Corp.***, 213 DPR 980, 993 (2024).

Por otro lado, la Regla 42.2 de Procedimiento Civil, *supra*, R. 42.2, establece que, en todos los casos, el tribunal especificará los hechos probados, consignará por separado sus conclusiones de derecho y ordenará que se registre la sentencia correspondiente. No obstante, la citada Regla dispone que: "[n]o será necesario especificar los hechos probados y consignar separadamente las conclusiones de derecho: (a) al resolver mociones bajo las Reglas 10 o 36.1 y 36.2 o al resolver cualquier otra moción, excepto lo dispuesto en la Regla 39.2". Íd.

De otra parte, es norma de derecho reiterada y establecida que los foros revisores nos encontramos en la misma posición que el foro primario al evaluar la procedencia de una sentencia sumaria. ***Batista v. Sucn. Batista et al.***, 2025 TSPR 93, 216 DPR __ (2025); ***Cruz Cruz v. Casa Bella Corp.***, supra, pág. 994. Sin embargo, los tribunales apelativos estamos limitados a: (1) considerar los documentos que se presentaron ante el foro de primera instancia; (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó de forma correcta. ***Birriel Colón v. Econo y otro***, 213 DPR 80, 91 (2023); ***Segarra Rivera v. Int'l. Shipping et al.***, 208 DPR 964, 981 (2022); ***Meléndez González et al. v. M. Cuebas***, *supra*, págs. 114–116. La revisión de los foros apelativos conlleva examinar de *novo* el

expediente del caso de la manera más favorable hacia la parte que se opuso a la solicitud de sentencia sumaria en el foro primario. *Birriel Colón v. Econo y otro*, supra, pág. 91.

**B.**

El Artículo VI, Sec. 2 de la Constitución del Estado Libre Asociado de Puerto Rico encomienda el poder para imponer y cobrar contribuciones y autorizar su imposición y cobro por los municipios a la Asamblea Legislativa y dispone que nunca será rendido o suspendido. **Const. ELA**, LPRA, Tomo 1. Actualmente, el Código de Rentas Internas de 2011, *supra*, rige el sistema contributivo de Puerto Rico. Este nuevo esquema tributario se adoptó a los fines de proveer alivios contributivos a los individuos y corporaciones mediante el establecimiento de tasas contributivas justas, como fórmula para el crecimiento económico de Puerto Rico. Exposición de Motivos de la Ley Núm. 1-2011, *supra*.

De entrada, destacamos que la Sección 1021.04 del Código de Rentas Internas de 2011, *supra*, sec. 30064, le da opción al contribuyente de tributar bajo las disposiciones del Código de Rentas Internas de 1994, según enmendado, *supra*, a su elección, para años contributivos después del 31 de diciembre de 2010 y antes del 1 de enero de 2012. En este caso, la normativa aplicable es la que envuelve las disposiciones del Código de Rentas Internas de 1994, según enmendado, *supra*, ya que las planillas de contribución sobre ingresos de corporación correspondientes a los periodos contributivos, objetos de la controversia, fueron radicadas ejerciendo la Opción 94 en el formulario correspondiente, en virtud de lo que dispone la precitada Sección 1021.04.

La antigua Sección 6011(a)(1) del Código de Rentas Internas de 1994, *supra*, establecía que, cuando se haya hecho un pago en exceso de cualquier contribución impuesta, el monto de dicho pago en exceso se acreditará a solicitud del contribuyente o a iniciativa

del Secretario, contra cualquier contribución impuesta por dicho código o plazo de la misma, entonces exigible y cualquier remanente se reintegrará inmediatamente al contribuyente. Además, faculta al Secretario a promulgar reglamentos proveyendo para que el monto determinado por el contribuyente, o por el Secretario, como un pago en exceso de la contribución para un año contributivo precedente, sea acreditado contra la contribución estimada para cualquier año contributivo siguiente. Íd., inciso (a)(3).

El Código de Rentas Internas de 1994, *supra*, mantuvo en vigor el *Reglamento relativo a la Ley de Contribuciones Sobre Ingresos de 1954*, Reglamento Núm. 457, aprobado el 11 de julio de 1957. Véase antigua Sección 6190 Código de Rentas Internas de 1994, *supra*. Dicho reglamento disponía, en la parte pertinente del Artículo 322–3, sobre reclamaciones de reintegro por el contribuyente, lo siguiente:

(a) Las reclamaciones del contribuyente sobre reintegros de contribución, intereses, penalidades y adiciones a la contribución que sean erróneas o ilegalmente cobradas serán hechas en la Forma 452.0 o en la Forma 480.0 o 480.0A, o en una planilla enmendada y debe ser radicada con el Colector de Rentas Internas o el Negociado de Contribuciones. Se debe hacer una reclamación separada para cada año contributivo o período".

(b) No se concederá reintegro o crédito alguno después de la expiración del período de prescripción estatutario aplicable a la radicación de una reclamación al efecto, excepto si se basare en una o más de las razones expresadas en la reclamación radicada antes de la expiración de dicho período. Las reclamaciones expresarán en detalle cada fundamento por el cual se reclama un reintegro, y los hechos suficientes para informar al Secretario el fundamento exacto de las mismas. La expresión de los fundamentos y hechos deberá estar autenticada mediante declaración escrita de que las mismas se hacen bajo las penalidades de perjurio. Una planilla debidamente preparada en la Forma 480 podrá a opción del contribuyente, constituir una reclamación de reintegro o crédito dentro del significado de la sección 322,

por el monto del pago en exceso expresado en dicha planilla. Para los fines de la sección 322, dicha reclamación se consideraría como radicada a la fecha en la cual dicha planilla se considera radicada. Una opción para considerar la planilla como una reclamación de reintegro o de crédito será evidenciada por una declaración en la planilla expresando la cantidad determinada como pago en exceso e informando si dicha cantidad deberá reintegrarse al contribuyente o si deberá aplicarse como crédito contra la contribución estimada del contribuyente para el año contributivo inmediatamente siguiente al año contributivo para el cual la planilla se rindiere. Si el contribuyente optare porque se aplique la totalidad o parte del pago en exceso declarado en su planilla a su contribución estimada para el año contributivo siguiente, no se concederán intereses sobre dicha parte de pago en exceso acreditada y dicha cantidad se aplicaría como pago a cuenta de la contribución estimada para dicho año o los plazos de la misma. La radicación de una planilla debidamente preparada en la Forma 480 A, constituirá una opción del contribuyente para que su planilla sea considerada como una reclamación de reintegro, y dicha planilla constituirá una reclamación de reintegro dentro del significado de la sección 322 por el monto del pago en exceso que resulte del cómputo por el Secretario de la contribución sobre la base de la planilla. Para los fines de la sección 322, dicha reclamación se considerará como radicada a la fecha en la cual dicha planilla se considera radicada. En cualquier caso, en el cual un contribuyente optare porque se le reintegre un pago en exceso, no podrá luego cambiar su opción para que su pago en exceso sea aplicado como pago a cuenta de su contribución estimada. Una reclamación que no cumpla con este párrafo, no se considerará como una reclamación de reintegro para ningún propósito. Respecto a limitaciones sobre el reintegro o crédito de contribuciones, véanse los artículos 322-7 a 322-11, ambos inclusive.

[…].

En ***González Padín Co. v. Tribunal de Contribuciones de P.R. y Buscaglia, Tes., Interventor***, 66 DPR 964, 984 (1947), el Tribunal Supremo estableció que, el abonar un exceso en el pago de las contribuciones para determinado año a contribuciones pendientes de pago para otro año, constituye pago de estas últimas

de manera tan efectiva como si tales pagos se hubieran hecho en dinero. Allí, se resolvió además que, cuando se determina más tarde que el abono del exceso fue erróneo, la deuda contra la cual se abonó el exceso y se dio por extinguida, permanece extinguida. Íd. Por lo que, la única cuestión de responsabilidad contributiva pendiente se relaciona con el año respecto del cual se concedió el abono erróneo. Íd.

De otra parte, el Código de Rentas Internas de 2011, *supra*, dispone en cuanto a los pagos en exceso y los reintegros lo siguiente:

Sección 6021.01.—Plazo Pagado en Exceso

Si el contribuyente hubiere pagado como contribución o como un plazo de la misma, una cantidad en exceso de la cantidad determinada como el monto correcto de dicha contribución o plazo, el pago en exceso se acreditará contra la contribución o los plazos no pagados, si los hubiere. Si la cantidad ya pagada, fuere o no a base de plazos, excediere de la cantidad determinada como el monto correcto de la contribución, el pago en exceso se acreditará o se reintegrará según se provee en este Subcapítulo. 13 LPRA sec. 33021.

De manera similar al derogado Código, la Sección 6021.02(a)(1) del Código de Rentas Internas de 2011, *supra*, sec. 33021, expone lo que sucede cuando el contribuyente hace pagos en exceso de la cantidad determinada como monto correcto de contribución. Este establece que, "el pago en exceso se acreditará contra la contribución o los plazos no pagados, si los hubiere" y, si la cantidad pagada se excediere de la cantidad determinada como el monto correcto de la contribución, el pago en exceso se acreditará o se reintegrará según se provee en el Subcapítulo A de dicho código. Íd.

Por su parte, la Sección 6021.02 del Código de Rentas Internas de 2011, *supra*, sec. 33022, establece, en lo pertinente, lo siguiente:

(a) Autorización

(1) Pago en Exceso. — Cuando se haya hecho un pago en exceso de cualquier contribución impuesta por los Subtítulos A y B, el monto de dicho pago en exceso se acreditará a solicitud del contribuyente o a iniciativa del Secretario sin necesidad de solicitud al efecto, contra cualquier contribución impuesta por este Código o plazo de la misma entonces exigible y cualquier remanente se reintegrará inmediatamente al contribuyente. Dicho reintegro le será devuelto a los consumidores, aunque el Gobierno de Puerto Rico se encuentre bajo un proceso de restructuración judicial como lo es el Título III de la Ley PROMESA (*Puerto Rico Oversight, Management and Economic Stability Act*) o cualquier otro proceso de restructuración, voluntario o involuntario al amparo de la legislación federal o local aplicable. En aquellos casos en que un contribuyente haya solicitado un reintegro y a la fecha de efectividad de este Código, el Secretario de Hacienda no haya emitido el pago del mismo, el contribuyente tendrá la opción de radicar una solicitud por escrito o por método electrónico solicitando que dicho reintegro se considere un pago de contribución estimada sujeto a lo dispuesto en el Inciso (3) de este Apartado (a). [...]

(3) Créditos Contra la Contribución Estimada. — El Secretario está autorizado para promulgar reglamentos proveyendo para que el monto determinado por el contribuyente, o por el Secretario, como un pago en exceso de la contribución para un año contributivo precedente sea acreditado contra la contribución estimada para cualquier año contributivo subsiguiente. Si el contribuyente solicita que el pago en exceso sea acreditado contra la estimada para cualquier año contributivo subsiguiente, el Secretario no podrá utilizar dicho pago en exceso contra contribuciones adeudadas por el contribuyente a la fecha en que surgió dicho pago en exceso. No obstante, una vez el contribuyente haya solicitado que un pago en exceso sea acreditado a un periodo contributivo siguiente, éste no podrá enmendar la planilla o formulario para solicitar un reintegro por aquella cantidad del pago en exceso que fue aplicada como crédito al próximo periodo contributivo. [...][16]

---

[16] El inciso (a) de dicha Sección fue enmendada mediante la Ley Núm. 195-2018, a los fines de asegurar que el reintegro sea pagado a los contribuyentes, a pesar de la quiebra de Puerto Rico.

Por último, la Sección 6051.07 del Código de Rentas Internas de 2011, *supra,* sec. 33207, faculta al Secretario de Hacienda a llegar a acuerdos con contribuyentes en materia contributiva. "Dicho acuerdo, una vez formalizado será final y concluyente y, excepto cuando se demostrare fraude o engaño, o falsedad de un hecho pertinente". Íd. Los acuerdos finales a ser otorgados por el Secretario con relación a asuntos relacionados con años contributivos que comiencen después del 31 de diciembre de 2010, se regirán por las disposiciones del Código de Rentas Internas de 2011. Sección 6091.06 del Código de Rentas Internas de 2011, *supra,* sec. 33366.

### IV.

A tenor con la normativa jurídica pormenorizada, nuestra revisión de la sentencia sumaria es de *novo,* aunque limitada a la prueba documental presentada ante el TPI. A su vez, debemos examinar el expediente de la manera más favorable a la parte que se opone a la solicitud de sentencia sumaria. Véase, ***Meléndez González, et al. v. M. Cuebas***, *supra,* pág. 118.

De un pormenorizado estudio del expediente, determinamos que tanto la *Moción de Sentencia Sumaria* como su oposición, cumplieron con los requisitos de la Regla 36 de Procedimiento Civil, *supra.* Ahora bien, luego de una revisión exhaustiva del mismo, concluimos que existen hechos materiales en controversia que impiden la disposición del pleito de forma sumaria y ameritan la celebración de una vista evidenciaria. Adviértase que, del expediente y de la propia *Sentencia Parcial* apelada, surgen los hechos que están en controversia, por lo que no procedía resolver el caso de epígrafe sumariamente, a tenor con las normas jurídicas aplicables.

Tras un análisis objetivo, sereno y cuidadoso del expediente del caso y de los argumentos esbozados por las partes, en correcta práctica adjudicativa apelativa, resolvemos que el TPI incidió al

emitir la *Sentencia Parcial* apelada. En este caso, resulta forzoso concluir que, el propio foro primario estableció en su sentencia las controversias de hechos materiales que le impedían adjudicar el caso por la vía sumaria.

Tras determinar que existen hechos materiales en controversia, debemos cumplir con la exigencia establecida en la Regla 36.4 de Procedimiento Civil, *supra*, y exponer cuáles son, así como exponer cuáles están incontrovertidos.

En este caso, el TPI declaró Ha Lugar la *Moción de Sentencia Sumaria* presentada por DFC y expresó que:

> "[e]n la **Vista celebrada el 30 de septiembre de 2025, y a preguntas de este Tribunal, el representante autorizado del Departamento de Hacienda** no pudo:
>
> a) identificar un número de cuenta a la cual se haya aplicado y/o acreditado el dinero del sobrepago que reclama DFC;
> b) explicar el ejercicio contable, si alguno, que llevó a cabo el Departamento de Hacienda para aplicar y/o acreditar el sobrepago que reclama DFC; y tampoco pudo:
> c) identificar entrada contable alguna (i.e.: "dinero en efectivo"; "cuenta por cobrar"; "cuenta por pagar" u "otra") contra la cual se haya aplicado y/o acreditado el dinero del sobrepago que reclama DFC. (Énfasis nuestro).

Resulta puntual mencionar que, en nuestro ordenamiento jurídico, las meras alegaciones no hacen prueba. ***Mayagüez Hilton Corp. v. Betancourt***, 156 DPR 234, 256-257 (2002) citando a J.A. Cuevas Segarra, <u>Tratado de Derecho Procesal Civil</u>, San Juan, Pubs. JTS, 2000, T. I, págs. 323-324. "[P]or lo que tampoco podrían tener el efecto de considerarse enmendadas [las alegaciones] para conformarlas con una prueba inexistente. Íd. En este caso, el foro primario celebró una vista para argumentar asuntos relacionados a las mociones dispositivas. Dicha vista, fue una argumentativa y no evidenciaria, pues allí no se presentó prueba alguna según lo que se desprende de la *Minuta*. Así que, los fundamentos esbozados por el TPI para resolver la controversia no resultan suficientes para

adjudicar adecuadamente el caso, pues no están basados en prueba desfilada ante sí. Resulta evidente que, no se ha demostrado al tribunal que gestión contributiva, si alguna, se ha hecho con el sobrepago reclamado por DFC.

De un examen sosegado del expediente, constatamos que, no está en controversia que, DFC hizo un sobrepago de $34,097,526 para el año contributivo de 2012. Dicha cantidad se menciona en el *Closing Agreement* de 2013 suscrito por las partes. El Departamento de Hacienda reconoció, en dicho acuerdo que, para el periodo contributivo del año 2012, el grupo corporativo Doral poseía un sobrepago total de $56,083,214. Cantidad que incluía la suma de $34,097,526 de DFC, objeto de la controversia. El *Closing Agreement* establece la suma total que podía ser transferida, prorrateada y usada por las entidades del grupo corporativo para compensar contribuciones sobre ingresos adeudadas a partir del año contributivo de 2013, ya fuere mediante reclamaciones de reintegro o contribuciones estimadas, las cuales estarían sujetas a auditoria por el Departamento de Hacienda.

Según los hechos alegados por DFC, Doral Bank solicitó el reintegro de $38,565,123, que incluía el aludido sobrepago de DFC en su planilla enmendada del 26 de noviembre de 2014. Posteriormente, Doral Bank la enmendó y solicitó un reintegro por $18,316,000. Por su parte, DFC lo solicitó en su planilla enmendada del 18 de febrero de 2015 al reclamar un sobrepago de $31,265,521, incluyendo una solicitud de reintegro por $20,249.123. Por segunda vez, DFC enmendó la planilla y reclamó un sobrepago de $31,995,672, y presentó una solicitud de reintegro por la suma de $20,249,123.

Ahora bien, DFC aduce que, a pesar de que notificó la intención de hacer una transferencia de $33,349,930 a Doral Bank, esta no se perfeccionó. Alega que, del crédito de $34,097,526, el

grupo corporativo Doral solo utilizó una porción de dicha suma, dejando un balance no aplicado de $30,710,718 del sobrepago de DFC. Así pues, alude a que, las planillas posteriores a 2014 reflejan que Doral Bank nunca aplicó o cobró el crédito, por lo que quedó un balance no aplicado de $30,710,718.

La contención de la parte apelante, en el recurso de epígrafe, es que las enmiendas del DFC a su planilla de 2013 son ineficaces, por lo que cualquier gestión con respecto al sobrepago debería efectuarse con respecto al año 2014. El Departamento de Hacienda alega que, una vez Doral Bank reclamó el sobrepago otorgado por DFC por la cantidad de $33,349,930, como crédito a la planilla estimada del año 2014, se convirtió en contribución estimada pagada en el 2014 de Doral Bank, de manera como si los pagos se hubieran hecho en dinero, según lo resuelto en ***González Padín Co. v. Tribunal de Contribuciones de P.R. y Buscaglia, Tes., Interventor***, supra. Esto, toda vez que, Doral Bank radicó la planilla para el periodo contributivo del año 2013 ejerciendo la Opción 94, según dispone la Sección 1021.04 del Código de Rentas Internas de 2011, *supra*, por lo que le son de aplicación las disposiciones del Código de Rentas Internas de 1994, supra, y el Reglamento Núm. 457-1957, *supra*.

Dicha parte sostiene que, DFC estaba impedido de reclamar en la primera planilla del año 2013, radicada el 18 de febrero de 2015 y enmendada el 23 de diciembre de 2015, el crédito transferido por DFC a Doral Bank. Adujo que, en este caso, solo procede un reintegro ajustado de $160,590 a favor de DFC para el periodo del año 2013. Además, arguyó que, conforme al *Closing Agreement*, tenía libertad de revisar y auditar las planillas, sin sujeción a término de tiempo alguno. Por lo cual, adujo que, no había impedimento para llevar a cabo la auditoria, aun cuando haya sido con posterioridad a la radicación de las planillas enmendadas.

Por su parte, DFC argumenta, en su oposición al recurso, que el Departamento de Hacienda hizo una interpretación errónea de derecho según lo dispuesto en el Código de Rentas Internas de 2011, *supra*, al concluir que, si el contribuyente opta por que se aplique la totalidad o parte del sobrepago en la contribución estimada para el año contributivo siguiente, ello equivale a un pago. Además, arguye que no se puede aplicar el reintegro a ninguna responsabilidad contributiva posterior porque DFC estuvo sujeta a un proceso de quiebra y, Doral Bank fue cerrado en 2015 y ya no conduce negocios. Por ello, sostiene que, el balance pendiente del reintegro debe ser pagado para ser distribuido entre los acreedores de DFC y *Federal Deposit Insurance Corporation* (FDIC), según estipulado por estos últimos en el *Settlement and Release Agreement*.

Además, alega que, ya que las enmiendas fueron aceptadas por el Departamento de Hacienda, la expresión contenida en la planilla inicial de Doral Bank para el periodo contributivo del año 2013, a los efectos de que el sobrepago se aplicara a la responsabilidad contributiva para el año 2014, dejó de tener vigencia. Asimismo, aduce que, las solicitudes de reintegro se presentaron dentro del término prescriptivo de cuatro años. Así las cosas, sostiene que, las enmiendas a las planillas eran válidas porque, en ese momento, el Código de Rentas Internas de 1994, *supra*, no limitaba la facultad de los contribuyentes a enmendar sus planillas para solicitar posteriormente un reintegro.

También, DFC alega que, la Ley Núm. 195-2018, que enmendó la Sección 6021.02 del Código de Rentas Internas de 2011, *supra*, sec. 33022(a)(3), la cual impide que, una vez el contribuyente haya solicitado que un pago en exceso sea acreditado a un periodo contributivo siguiente enmiende la planilla para solicitar un reintegro por aquella cantidad del pago en exceso, se aprobó después de que DFC y Doral Bank enmendaran sus planillas para

solicitar el reintegro objeto de la controversia. Asimismo, alegó que, contrario al caso de ***González Padín Co. v. Tribunal de Contribuciones de P.R. y Buscaglia, Tes., Interventor***, supra, en este caso, la mayor parte del sobrepago realizado por la parte apelada no fue aplicado contra ninguna responsabilidad contributiva, quedando un balance de $30,710,718 que le pertenece como contribuyente.

Sin embargo, resulta palmario que, de los documentos en apoyo a las mociones dispositivas <u>no</u> surge qué ocurrió a partir de 2013 con el sobrepago. No está claro si dicho sobrepago se aplicó a la contribución estimada para el año contributivo de 2014 de Doral Bank o si se le reintegró a DFC.

En la *Sentencia Parcial* apelada, el TPI no realizó determinaciones de hechos, sino que adoptó por referencia los argumentos y alegaciones de DFC. Tras un pormenorizado análisis objetivo, sereno y cuidadoso de la *Moción de Sentencia Sumaria* y su oposición, así como de sus anejos y de la totalidad del expediente, resolvemos que los siguientes hechos materiales no están en controversia:

1. En la planilla de 2012 presentada por DFC se reflejó un pago de $34,097,526 en exceso de la responsabilidad contributiva de dicha parte para el año contributivo concluido el 31 de diciembre de 2012.
2. El 30 de diciembre de 2013, el Departamento de Hacienda, DFC y otras empresas del grupo corporativo Doral otorgaron el *Closing Agreement* de 2013 donde se reflejó la existencia del sobrepago de DFC en la cantidad de $34,097,526.
3. El *Closing Agreement* de 2013 contemplaba que el crédito por el sobrepago de DFC podía ser transferido entre las empresas del Grupo Corporativo.
4. El *Closing Agreement* aclaraba que el balance del sobrepago de DFC se reconocería de manera indefinida hasta que fuera aplicado al pago de contribuciones o se rembolsara por el Gobierno.

5. El *Closing Agreement* de 2013 contemplaba que el Departamento de Hacienda podría conducir una auditoría de las planillas de DFC.

6. Como parte de su planilla para 2013, presentada el 15 de julio de 2014, DFC incluyó un Anejo titulado *Statement to Be Attached and Be Made Part of P.R. Corporation Income Tax Return for the Year Ended December 31, 2013*. Dicho documento notificaba al Departamento de Hacienda una transferencia de $33,349,930 de los dineros del reintegro, y de una aplicación por DFC del balance de $747,596 a su responsabilidad contributiva para 2013.

7. En su planilla para el período contributivo terminado el 31 de diciembre de 2013, Doral Bank reportó el sobrepago de $33,349,930 y lo caracterizó como un crédito a ser utilizado en su planilla estimada para el año siguiente, 2014.

8. El 26 de noviembre de 2014, Doral Bank enmendó su planilla de 2013. En esa ocasión reclamó un reintegro de $38,565,123.

9. El 18 de febrero de 2015, Doral Bank enmendó nuevamente su planilla para 2013 y solicitó un reintegro por $18,316,000. Ese mismo día, DFC enmendó su planilla de contribución sobre ingresos de 2013 para reclamar un sobrepago de $31,265,521, incluyendo una solicitud de reintegro por $20,249.123.

10. El 27 de febrero de 2015, el FDIC emitió un comunicado de prensa anunciando que, por disposición del Comisionado de Instituciones Financieras de Puerto Rico, se había ordenado el cierre de Doral Bank, efectivo en esa fecha, y que se había designado al FDIC como síndico de liquidación.

11. El 23 de diciembre de 2015, DFC presentó una segunda planilla enmendada para el año terminado el 31 de diciembre de 2013 en la que reclamó un sobrepago de $31,995,672, y presentó una solicitud de reintegro por la suma de $20,249,123.

12. El 12 de agosto de 2016, DFC y otras partes relacionadas otorgaron ante el Tribunal de Quiebras un *Settlement and Release Agreement* con el FDIC, actuando en representación de Doral Bank, en su capacidad de síndico, en el cual se estipuló, entre otras cosas, que el sobrepago de DFC, asociado con el *Closing Agreement* de

2013, se adjudicaría a DFC (con una participación para el FDIC), y que DFC sería la encargada de su cobro.

13. El 29 de septiembre de 2021, el Departamento de Hacienda notificó a DFC que se estaba abriendo una auditoría de DFC para los años contributivos del 2011 al 2015.

14. En su Informe Final Enmendado del 26 de enero de 2024, el Departamento de Hacienda concluyó que DFC no tenía derecho al reembolso del Sobrepago de DFC, porque el crédito fue transferido y reclamado por Doral Bank en su planilla para 2013, solicitándose su aplicación para su contribución estimada para 2014.

Así las cosas, en cumplimiento con la obligación que nos impone la Regla 36.4 de Procedimiento Civil, *supra,* R. 36.4, reiterada en ***Meléndez González et al. v. M. Cuebas***, supra, resolvemos que se encuentran en controversia los siguientes hechos materiales: (i) a qué cuenta se acreditó el sobrepago; (ii) qué ejercicio contable hizo el Departamento de Hacienda para acreditar el sobrepago reclamado por DFC; (iii) a qué entrada contable se aplicó dicho sobrepago; (iv) a qué periodo contributivo se le aplicó el sobrepago reclamado, si alguno y (v) si no se aplicó el sobrepago, determinar la vigencia de la deuda o si prescribió. Dichos hechos materiales, están controvertidos.

Por los fundamentos pormenorizados, devolvemos este caso al TPI para que se puedan dilucidar, a través de una vista evidenciaria, los hechos materiales en controversia precedentemente formulados.

**V.**

Por los fundamentos pormenorizados, se revoca la *Sentencia Parcial* recurrida y se devuelve el caso al TPI para la celebración de una vista evidenciaria, a los efectos de resolver las controversias de hechos formuladas previamente.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones